JOHNSTON, J.,
delivered the opinion of the court. The error complained of is the refusal of the circuit sujierior court to set aside the verdict, on the ground that it was contrary to the evidence; and this court is now called upon to review that decision upon the facts stated in the bill of exceptions.
The prisoner in his petition, and his counsel here in argument, contend, that the facts as stated in his bill of exceptions ■warranted a conviction only of manslaughter, and not of murder in the second degree ; and upon the correctness of this proposition depends the decision which this court is now called upon to make. The distinction between these two offences is too well established to admit of doubt in the present day. In the one, malice is a necessary ingredient; in the other, it is wanting. In the one, the crime is attributed to a wicked, depraved and malignant spirit; while in the other, it is imputed by the benignity of the law, to human infirmity. If for instance, death ensues from a sudden transport of passion or heat of blood, upon a reasonable provocation, and without malice, it is considered as amounting only to manslaughter. 1 Russ, on Crimes, 486. But the person relying upon the plea of provocation, must make out the circumstances of alleviation to the satisfaction of the jury, unless they arise out of the evidence adduced against him; as the presumption of law deems all homicide to be malicious, until the contrary appears. He must shew, that sufficient provocation had been given, and that the act or *blow which produced death was attributable to the passion of anger arising from that provocation. This doctrine is forcibly illustrated in the cases of the Queen v. Kirkham, 8 Carr. & Payne, 115, and of the King v. Thomas, 7 Id. 817; 34 Eng. C. L. Rep. 318; 32 Id. 751. In the former it is said, ‘ !If a person has received a blow, and in the consequent irritation, immediately inflicts a wound that occasions death, that will be manslaughter. But he shall not be allowed to make this blow a cloak for what he does; and, therefore, though there have been an actual quarrel, and the deceased shall have given a great number of blows, yet if the party inflict the wound, not in consequence of those blows, but in consequence of previous malice, all the blows would go for nothing.” In the latter, the judge says, “There is no doubt here, but a violent assault was committed; but the question is, whether the blow given by the prisoner was produced by the passion of anger excited by that assault?” And so in the case before us, we may say, the deceased committed a violent assault upon the prisoner in throwing the brick at him; but did ( the prisoner shoot him in consequence of the ungovernable passion excited by that assault? or did he seize upon it as an opportunity of gratifying his previous malice, and carrying into effect a preconceived design to take the life of the deceased? These were questions that belong to the jury to decide, and if the record contains testimony from which the jury might reasonably conclude, as they did, that the killing was the result of malice aforethought, then it would be an invasion of their province for this court to interfere and set aside their verdict. But if on the other hand, there were no evidence contained in the facts as certified (which constituted all the testimony in the case) from which this conclusion might be reasonably drawn, then, undoubtedly, it would be the duty of this court now, as it wqjild have been the duty of the court below, to set aside the verdict, and direct a new trial.
*'Without going into a minute detail of the evidence here, this court is of the opinion, after a careful examination of all the testimony stated in the bill of exceptions, that the jury were well justified in the verdict which they rendered against the prisoner. The evidence clearly shews, that he considered the deceased the author of the anonymous letter thrown into his yard, at the very sight of which he became so “violently excited,” that a member of his family threw it into the fire to prevent him from seeing it again: that two days before the fatal occurrence, he declared, “that he would kill a man named Sykes, and the deceased, and two or three other damn’d rascals in Blandford, and then would be satisfied;” and he told Jones, the day before the homicide, that he believed the deceased wrote the anonymous letter: and that he prepared the pistols, and a scythe blade, some nights previous to the homicide, as a means of defence against the attempts to lynch him threatened in the letter. These antecedent declarations and circumstances, coupled with the conduct of the prisoner when the deceased went to see him for the purpose of convincing him that he was not the author of the offensive letter; his refusal to listen to his explanation ; his violent manner and abusive language; fully authorized the jury in coming to the conclusion, that the deceased fell a victim to the malice and revenge entertained towards him by the prisoner, from the time the anonymous letter was first thrown into his yard.
But throwing out of view every thing that occurred anterior to the day on which the killing took place, and confining our consideration to what then occurred entirely, this court is of the opinion, that the facts proved make out a case of murder, and not of manslaughter only. “If, after an interchange of blows on equal terms, one of the parties on a sudden, and without any such intention at the commencement of the affray, snatches up a deadly weapon, and kills the party with it, such ^killing will be only manslaughter. *756 But if a party, under colour of fighting upon equal terms, uses from the beginning of the contest a deadly weapon, without the knowledge of the other party or 11 if, at the beginning of the contest, he prepares a deadly weapon, so as to have the power of using it in some part of the contest, and uses it accordingly in the course of the combat, and kills the other party with such weapon, the killing, in both these cases, will be murder. ” 1 Russ, on Crimes 446. Now, the application of these principles to this case is easy and obvious. The prisoner at the beginning of the contest, so soon as he saw the deceased in the act of dismounting from his horse, ran into his house, and armed himself with a deadly weapon (as we are bound to infer from the evidence), returned, and placed himself on the side walk, with his hands in the pockets of his pantaloons. So soon as the deceased, who was at the distance ofi twenty-three yards, threw the brick bat at him, the prisoner “rushed” towards him, drew from his pocket a pistol, cocked it, advanced to within twelve paces of the deceased, took deliberate aim, and fired, while the deceased was retreating slowly with his face towards the prisoner; then drew forth another pistol, but before he fired that, the deceased fell, mortally wounded. Here, we have the preparation of the deadly weapon beforehand, the use of that weapon from the beginning, and the fatal fire given when his adversary was actually retreating. Surely, this was murder; and these facts would have justified the verdict, even if no previous malice had been proved.
Writ of error denied.